UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
JUL 01 2009
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

_____

UNITED STATES OF AMERICA,

v.

BHAVESH KAMDAR,

                        Defendant.

_____

**REPORT AND
RECOMMENDATION**

04-CR-00156(A)(M)

This case was referred to me by Hon. Richard J. Arcara for supervision of all

pretrial proceedings [11]. Before me is defendant's motion to dismiss the indictment [26]. Oral

argument was held before me on May 26, 2009, and I permitted the parties to file post-argument

briefs [37, 40, 41]. For the following reasons, I recommend that the motion be DENIED.

## BACKGROUND

On June 30, 2004 defendant was charged in a 33-count indictment arising from a

contract between his corporation, Industrial Site Services, Inc. ("ISS") and the New York State

Office of General Services ("NYS-OGS"). Indictment [1], Section A, ¶¶1-2. The indictment

alleges that defendant falsely represented to NYS-OGS that he and his wife were required to

post personal guarantees and collateral in order to obtain a performance bond from AIG, id., ¶¶4-

8, and that as a result of these representations, NYS-OGS agreed that it would make bond

expense payments to ISS up to $402,000. Id., ¶9.

The indictment further alleges that defendant made other false representations

which permitted ISS to continue to receive bond expense payments in excess of $402,000, and

induced NYS-OGS to refrain from attempting to recoup these payments. Indictment, Section B,

¶3.   The indictment charges defendant with, *inter alia*,  mail fraud and money laundering in violation of 18 U.S.C. §§1341 and 1957.

As a result of this conduct, the State of New York commenced a civil action against defendant in August 2004, alleging fraud, misappropriation of public property, unjust enrichment and breach of contract.  Declaration of Joseph Sedita, Esq. [26-3], Ex. A,  p. 3.  After a non-jury trial on these claims, the State of New York Supreme Court, County of Albany, granted judgment in favor of the State.  Id.  This determination was reversed on April 23, 2008 by the New York State Appellate Division, Third Department, which found, *inter alia*, that "clear and convincing evidence does not exist that the alleged misrepresentations constituted a material fact which justifiably induced OGS to agree to the guarantee provision."  Id. at p. 8.

Defendant moves to dismiss the indictment on several grounds, including that the mail fraud charges are facially insufficient and the Appellate Division's decision collaterally estops the government from maintaining this action.

## DISCUSSION AND ANALYSIS

**A.    The  Mail Fraud Charges Are Facially Sufficient.**

**1.    The Mail Fraud Charges are Not Predicated on Defendant's Statements of Law.**

Defendant argues that the mail fraud count of the indictment should be dismissed because this count is predicated on defendant's representations as to matters of law ("oral representations made by Mr. Kamdar relating to the guarantee constituted a lay person's

characterization of the legal import of a contractual relationship"), which, even if false, are not actionable in fraud. Defendant's Memorandum of Law [26-2], pp. 3-4.

However, the indictment does not allege that defendant made fraudulent representations as to matters of law. Instead, it alleges that defendant made *factual* misrepresentations concerning his communications with AIG: "Primary among [defendant's] oral and written false and fraudulent statements were statements that AIG . . . required the defendant and his spouse . . . to provide their personal guarantee and collateral, consisting of personal funds, of approximately $1,000,000 to AIG before AIG would issue the performance bond . . . . In truth and in fact, and as defendant well knew, AIG never asked the defendant . . . to provide personal guarantees or collateral before it would issue the performance bond". Indictment [1], ¶¶6 and 7.


2.      **The Indictment Need Not Identify Defendant's False Statements.**

Defendant does not dispute that the indictment adequately identifies the misrepresentations he allegedly made to obtain the bond guarantee charges of $402,000. However, he argues that the indictment is facially deficient because it fails to identify the false representations allegedly made by defendant to induce the state to continue making performance bond charges beyond the alleged contractual cap of $402,000 and to refrain from attempting to recoup these payments. Defendant's Memorandum of Law [26-2], pp. 5-7. The government responds that the indictment is sufficient because it tracks the language of the statute. Government's Opposing Memorandum of Law [32], pp. 2-6.

18 U.S.C. §1341 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office . . . any matter or thing . . . shall be fined under this title or imprisoned for not more than 20 years, or both". The indictment alleges, *inter alia*, that defendant "devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses . . . and, for the purpose of executing said scheme and artifice, and attempting to do so, placed in post offices and authorized depositories for mail matter, matters and things", in violation of 18 U.S.C. §1341. Indictment [1], p. 5, ¶2.

"'To state an offense, an indictment need only track the language of the statute and, if necessary to apprise the defendant of the nature of the accusation against him, state time and place in approximate terms.'" United States v. Clark, 2009 WL 909555, *1 n. 1 (2d Cir.) (summary order), cert. denied, 2009 WL 1370855 (2009). "While some identification is required . . . , it is not necessary that the indictment itself go into evidentiary matters." United States v. Bernstein, 533 F.2d 775, 786 (2d Cir.), cert. denied, 429 U.S. 998 (1976). "It is, of course, for just this reason that bills of particulars to be furnished pursuant to Fed. R. Crim. P. 7(f) may be sought . . . and must be provided to make certain that there is adequate notice under the Sixth Amendment." Id.

The general rule that an indictment tracking the statutory elements of the crime is facially sufficient is not supplanted merely because defendant is charged with mail fraud. "When the crime charged involves making false statements, 'the 'core of criminality' is not the

substance of the false statements but rather that knowing falsehoods were submitted. . . .'"
United States v. Rigas, 490 F.3d 208, 229 (2d Cir. 2007), cert. denied, 128 S.Ct. 1471 (2008).
Having elected not to request a bill of particulars as to the false representations upon which the
government relies, defendant cannot instead challenge the facial sufficiency of the indictment on
this basis.

For the first time in his reply, defendant relies on United States v. Curtis, 506 F.
2d 985 (10th Cir. 1974) and United States v. Ashley, 905 F.Supp. 1146, 1159 (E.D.N.Y. 1995)
("Although Counts . . . track the language of Section 1343. . . Ashley is not provided with any
'facts and circumstances as will inform . . . [him] of the specific offence[s] coming under the
general description, with which he is charged.' . . . 'Some substantial indication of the nature or
character of any scheme or artifice to defraud, or to obtain money or property by means of false
pretenses, representations or promises is requisite.' . . . 'And it is not sufficient in this regard to
merely plead the statutory language.'"). Defendant's Reply [35], p. 4 n. 12. However, even if
these authorities were timely cited, they fail to change my determination, as they are inconsistent
with the Second Circuit authority previously discussed.

In any event, I "must read an indictment 'to include facts which are necessarily
implied by the specific allegations made'". Rigas, supra, 490 F.3d at 229. While the factual basis
for the indictment differentiates between the $402,000 bond guarantee payments by NYS-OGS
and those exceeding that amount, the fundamental allegation is that *any* bond guarantee
payments were based, at least in part, upon defendant's underlying misrepresentation that AIG
required him and his wife "to provide their personal guarantee and collateral, consisting of
personal funds, of approximately $1,000,000 to AIG before AIG would issue the performance

-5-

bond." Indictment [1], Part A, ¶6. Because defendant does not dispute the sufficiency of the

allegation as to the underlying false and misleading representation that led to the payment of the

first $402,000 in bond guarantee payments (*see* Defendant's Reply [35], p. 3[1]), he cannot argue

that the indictment fails to sufficiently specify the false and misleading representations that led to

payments in excess of $402,000.

Moreover, "'although largely overlapping, a scheme to defraud, and a scheme to

obtain money by means of false or fraudulent pretenses, representations, or promises, are

separate offenses.'" Ashley, supra, 905 F. Supp. at 1155. Thus, the government can prove a

violation of 18 U.S.C. §1341 by establishing either a scheme to defraud *or* a scheme to obtain

money by false or fraudulent pretenses. Therefore, even if I were to conclude that the indictment

did not adequately allege a scheme to obtain money by false or fraudulent pretenses, defendant

fails to challenge the indictment's allegation that he devised a scheme and artifice to defraud,

which is sufficient to allege a violation of 18 U.S.C. §1341. *See* United States v. King, 2000

WL 362026, *10 (W.D.N.Y. 2000)(Arcara, J. /Foschio, M.J.) ("the indictment does not allege a

wire fraud count based solely on false pretenses, rather, it alleges a scheme to defraud based upon

diversion of the Foundation's assets facilitated by acts of concealment by a fiduciary in the nature

of an elaborate embezzlement scheme. . . . [T]he use of a false pretense is not an essential

_____

[1]       "The indictment is quite precise concerning the initial misrepresentation charged. It
alleges that Mr. Kamdar lied about his wife and him being required to post collateral consisting of
personal funds in the amount of $1,000,000.00 to induce a surety to issue its bonds to his corporation."
(emphasis in original).

element of the federal wire fraud statute as the statute is written in the disjunctive.").[2]

Defendant further argues that this deficiency "cannot be cured by particularization, as no one is entitled to speculate regarding the mental processes and deliberations of the grand jury to determine what specific misrepresentations they had in mind when they voted the indictment." Defendant's Reply [35], p. 4. In support of this argument, defendant relies on Russell v. United States, 369 U.S. 749 (1962). However, in Russell, the court concluded that the indictment failed to allege an essential element of the crime, and stated "that a bill of particulars cannot save an invalid indictment". 369 U.S. at 770. Since I conclude that the indictment does not omit an essential element of the crime, defendant's reliance on Russell is misplaced. See Bernstein, supra, 533 F.2d at 787 (rejecting the defendant's argument that the "failure to specify the particular false statements in each of the separate counts allows no way of determining whether each false statement for which they were prosecuted was indeed the false statement that was considered by the grand jury").

**B.      Collateral Estoppel Does Not Apply**

Defendant next argues that this case is barred by the state court proceeding. In response, the government argues that collateral estoppel is inapplicable because it did not participate in the state prosecution, and because defendant has failed to establish that the issues

---

[2]      "The Second Circuit has indicated that '[b]ecause the mail fraud and the wire fraud statutes use the same relevant language, we analyze them the same way.'" Ashley, supra, 905 F.Supp. at 1157 n. 8 (quoting United States v. Schwartz, 924 F.2d 410, 416 (2d Cir. 1991)).

of fact in this case were decided in the state court proceeding. Government's Opposing Memorandum of Law [32], pp. 6-9.

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.' 28 U.S.C. §1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered." Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985). "New York law applies collateral estoppel 'if the issue in the second action is identical to an issue which was raised, necessarily decided and material in the first action, and the plaintiff had a full and fair opportunity to litigate the issue in the earlier action.'" Wilson v. Limited Brands, Inc., 2009 WL 1069165, *1 (S.D.N.Y. 2009).

"Collateral estoppel has been an established rule of federal criminal law". Ashe v. Swenson, 397 U.S. 436, 443 (1970). However, "the parameters of this doctrine may well be more circumscribed in the criminal arena." United States v. Davis, 906 F. 2d 829, 833 (2d Cir. 1990). "To determine whether collateral estoppel bars a later prosecution, a court must 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.'" United States v. McGowan, 58 F. 3d 8, 12 (2d Cir. 1995). "The defendant bears the burden to persuade the court that the issue he seeks to foreclose was 'necessarily decided in his favor by the prior verdict.'" Id.

-8-

Although neither party has cited any case that is directly on point, United States v. Davis, supra, is instructive. In Davis, the defendants were initially prosecuted in state court for various narcotics charges arising from a joint state and federal investigation. 906 F.2d at 831. In the state court proceeding, defendants successfully suppressed evidence and dismissed the indictment. Id. Subsequently, a federal indictment was returned charging similar narcotics violations, and defendants successfully moved to prevent the introduction of the evidence suppressed in the state court proceeding on collateral estoppel grounds. Id. at 831-832.

The Second Circuit reversed. Rejecting defendants' collateral estoppel arguments, it noted that "the difference in sovereigns . . . will foreclose the use of collateral estoppel against the second prosecution *except in the most unusual circumstances*." Id. at 833 (emphasis added). *See also* United States v. Sykes, 2006 WL 2711460, *4 (W.D.N.Y. 2006) (Siragusa, J.) ("The fact that the state and federal governments are not just different parties, but different sovereigns, generally forecloses the use of collateral estoppel to bar a second prosecution except in 'the most unusual circumstances.'").

To establish that the federal government is in privity with the state prosecution, "at a minimum, it must be shown that the federal prosecutors actively aided the state prosecutors during the local suppression hearing. Only then can it be said that their interests in enforcing federal law were sufficiently represented." Davis, supra, 906 F. 2d at 835. The court found that there was no privity between the state and federal prosecutions, noting that "the record . . . is totally barren of evidence of such control or participation. No federal prosecutors were present in [the] courtroom during the suppression hearing. Nothing indicates that they provided assistance

or advice to the local authorities at any time, or were involved in any way with the local prosecution or the decision not to appeal the suppression order." Id.

While AUSA Anthony Bruce submitted an affidavit in support of the state's summary judgment motion (Declaration of Joseph Sedita, Esq. [26-3], Ex. L), there is no indication that he actively participated in or directed the state court litigation. In sum, defendant has failed to establish "unusual circumstances" warranting application of the collateral estoppel doctrine.[3]

Defendant's double jeopardy arguments are likewise unpersuasive. "It has long been recognized that a federal prosecution, subsequent to a state proceeding prompted by the same conduct, is not precluded by the edicts of the Double Jeopardy Clause". United States v. Friedberg, 766 F. Supp. 87, 89 (E.D.N.Y. 1991) (citing cases), aff'd, 948 F.2d 1277 (2d Cir. 1991), cert. denied, 503 U.S. 919 (1992). A narrow exception to this rule is in the "extraordinary type of case" where "one sovereign can be said to be acting as a 'tool' of the other . . . or where one prosecution is merely 'a sham and a cover' for another". Davis, supra, 906 F. 2d at 832. However, as previously discussed, defendant has not made such a showing.

While the evidence presented in the state court proceeding might arguably entitle defendant to summary judgment were this a civil case, "'there is no such thing as a motion for summary judgment in a criminal case.'" United States v. Parker, 165 F.Supp.2d 431, 458

---

[3]     Because I conclude that the collateral estoppel doctrine should not be applied, I need not address the parties' arguments as to whether the Appellate Division's decision established the legal impossibility of the crimes charged in the indictment. See Defendant's Sur-Reply Memorandum [40]; Government's Response [41].

(W.D.N.Y. 2001) (Arcara, J./Foschio, M.J.) (*quoting* <u>Russell v. United States</u>, 369 U.S. 749, 791 (1962)). Therefore, the government is not collaterally estopped from prosecuting this case.

### C. Defendant's <u>Erie</u> Doctrine Argument is Untimely.

For the first time in his Reply Memorandum, defendant argues that the principles established by <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64 (1938) require the court to defer to the findings in the state proceeding, because the issues in this case center on the interpretation of the contract between ISS and NYS-OGS. Defendant's Reply Memorandum [35], Point III. However, I need not consider this argument as a basis for dismissal, since "new arguments may not be made in a reply brief". <u>Ernst Haas Studio, Inc. v. Palm Press, Inc.</u>, 164 F.3d 110, 112 (2d Cir. 1999).

### CONCLUSION

For these reasons, I recommend that defendant's motion to dismiss the indictment [26] be DENIED. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Crim. P. ("Rule") 58(g)(2) and Local Rule of Criminal Procedure 58.2.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge

in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 58.2 of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Local Rule 58.2, or with the similar provisions of Local Rule 58.2 (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED:      July 1, 2009

_JEREMIAH J. MCCARTHY_
United States Magistrate Judge